## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2015, 8:36 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Dori Newman
Newman & Newman, PC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard McCrumb,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 13, 2015

Court of Appeals Case No.
29A05-1412-CR-583

Appeal from the Hamilton Superior Court

The Honorable Gail Z. Bardach, Judge

Case No. 29D06-1308-CM-7197

**Vaidik, Chief Judge.**

# Case Summary

[1] Richard McCrumb appeals his Class C misdemeanor conviction of operating a motorboat with an alcohol concentration equivalent (ACE) of at least .08,

arguing that the evidence is insufficient to prove that he operated a "motorboat" within the meaning of the statute. Because the evidence is sufficient to show that McCrumb's jet ski is a "motorboat," we affirm his conviction.

## Facts and Procedural History

[2] The facts most favorable to the verdict reveal that in August 2013, Indiana Department of Natural Resources Officer Mark Baker was on patrol at Morse Reservoir in Hamilton County when he observed McCrumb operating a "personal watercraft"—commonly referred to as a jet ski—in an idle zone near Carrigan Road bridge exceeding the idle speed. Tr. p. 147-48. Officer Baker decided to watch McCrumb to see if he would slow down. *Id*. at 148. As Officer Baker watched McCrumb, a boat coming from the other direction yelled "[i]dle speed" in order to get McCrumb to slow down. *Id*. McCrumb, however, "goosed the throttle a couple times," which meant he "gave it a couple quick blasts," and then sped up while still in the idle zone. *Id*. at 148-49. Officer Baker turned on his red and blue emergency lights and followed McCrumb toward the south end of the reservoir. *Id*. at 150. McCrumb did not notice Officer Baker until he came to a stop in a cove.

[3] As McCrumb came to a stop, his personal watercraft tipped over, putting him and his passenger into the water. At that point, McCrumb noticed Officer Baker. Officer Baker told McCrumb why he stopped him, and asked McCrumb why he was exceeding the idle speed in an idle zone. McCrumb told the officer that he was experiencing some "mechanical difficulties," and that he had to

speed up to stay upright. *Id.* at 151. McCrumb "uprighted" his personal watercraft and got back on it. *Id.* As they were talking face-to-face, Officer Baker detected an odor of alcohol coming from McCrumb. *Id.* Officer Baker asked McCrumb if he had consumed any alcohol, and McCrumb responded that he had drunk three sixteen-ounce beers. Officer Baker informed McCrumb that although it is not illegal to consume alcohol while on a boat, it is illegal to operate a boat while legally intoxicated. Officer Baker asked McCrumb if he would mind stepping onto his boat to perform a few tests to ensure he was safe to continue operating his personal watercraft that day. *Id.* at 152. McCrumb agreed.

[4]     Officer Baker administered four standardized field-sobriety tests for people who are seated (as opposed to standing)—horizontal gaze nystagmus, finger-to-nose, palm pat, and hand coordination. Based on McCrumb's performance on these tests and Officer Baker's experience and training, he concluded that McCrumb was intoxicated. *Id.* at 171. McCrumb told Officer Baker, "Should I have been driving? Absolutely not." *Id.* at 187. Officer Baker read McCrumb Indiana's implied-consent law, which gave McCrumb the opportunity to consent to a chemical test or have his driver's license suspended for a year. McCrumb consented to the chemical test. Officer Baker then transported him to the Hamilton County Jail to administer the DataMaster certified breath test, which yielded a result of .09. *Id.* at 186.

[5]     The State charged McCrumb with Count I: Class C misdemeanor operating a motorboat with an ACE of at least .08 and Count II: Class C misdemeanor

operating a motorboat while intoxicated. Appellant's App. p. 5. In October 2014, a jury trial was held. Final Instruction No. 11 defined "motorboat" as "a watercraft that is equipped with an internal combustion, a steam, or an electrical motor or engine that is inboard or outboard; or propelled by any mechanical means. The term includes a personal watercraft." *Id*. at 112; *see also* Tr. p. 261. McCrumb was found guilty of Count I: Class C misdemeanor operating a motorboat with an ACE of at least .08 and not guilty of Count II. Tr. p. 271. The trial court sentenced McCrumb to sixty days in the Hamilton County Jail, with fifty-two days suspended and eight days served. Appellant's App. p. 129.

[6] McCrumb now appeals.

# Discussion and Decision

[7] McCrumb contends that the evidence is insufficient to sustain his conviction for Class C misdemeanor operating a motorboat with an ACE of at least .08. On a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). This Court respects the jury's exclusive province to weigh conflicting evidence. *Id*. We consider only the evidence most favorable to the verdict. *Id*. We must affirm if the evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

In order to convict McCrumb of Class C misdemeanor operating a motorboat with an ACE of at least .08 as charged here, the State must have proved that McCrumb operated a "motorboat" with an ACE of at least .08 grams of alcohol per 210 liters of his breath. Ind. Code § 35-46-9-6(a)(1)(B).[1] McCrumb argues that the State did not prove that he operated a "motorboat" within the meaning of the statute because "there was no evidence as to any motor function at trial; including the size of the motor." Appellant's Br. p. 9.

Indiana Code section 35-46-9-3 defines "motorboat" as follows:

> (a) As used in this chapter, "motorboat" means a watercraft (as defined in IC 14-8-2-305) propelled by:
>> (1) an internal combustion, steam, or electrical inboard or outboard motor or engine; or
>> (2) any mechanical means.
> (b) The term includes the following:
>> (1) A sailboat that is equipped with a motor or an engine described in subsection (a) when the motor or engine is in operation, whether or not the sails are hoisted.
>> (2) *A personal watercraft (as defined in IC 14-8-2-202.5).*

(Emphasis added). Indiana Code section 14-8-2-202.5, in turn, defines "personal watercraft" as a watercraft:

> (1) whose primary source of motive power is an inboard motor powering a water jet pump; and

---

[1] This statute was amended effective July 1, 2014, but this section was unchanged.

(2) that is designed to be operated by a person who sits, stands, or kneels on the surface of the watercraft rather than sitting or standing inside the watercraft.

[10] Here, the record shows that McCrumb's jet ski satisfies the definition of "motorboat." Officer Baker testified that when McCrumb was operating his personal watercraft—also known as a jet ski—he "goosed the throttle" a couple times, giving it a "quick blast." This supports the conclusion that McCrumb's jet ski is primarily powered by a motor. Moreover, the fact that McCrumb's jet ski traveled at different speeds and was experiencing "mechanical difficulties" further supports the conclusion that it is powered by a motor. In addition, McCrumb's jet ski required him to either stand or sit on the surface of the watercraft—as opposed to inside the watercraft. Despite McCrumb's argument on appeal, more specificity—such as the size of the motor—is not required. Accordingly, the evidence is sufficient to prove that McCrumb's jet ski is a personal watercraft, which is defined as a "motorboat" under the statute. *See Davis v. LeCuyer*, 849 N.E.2d 750, 754 (Ind. Ct. App. 2006) (acknowledging that a jet ski is a personal watercraft in the context of a negligence suit), *trans. denied*. We therefore affirm McCrumb's conviction for Class C misdemeanor operating a motorboat with an ACE of at least .08.

[11] Affirmed.

Kirsch, J., and Bradford, J., concur.